UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAITLIN G.<br>        Plaintiff,<br><br>        v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. CV 20-10250-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

**PROCEEDINGS**

On November 9, 2020, Ms. Caitlin G.[1] ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Social Security Disability Insurance benefits and Supplemental Security Income benefits. (Dkt. 1.) The Commissioner filed an Answer on April 6, 2021. (Dkt. 17.) On June 8, 2021, the parties filed a Joint Stipulation ("JS"). (Dkt. 19.) The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"),

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

the Court reverses the Commissioner's decision and remands this case for further proceedings in accordance with this Memorandum Opinion and Order and with law.

## BACKGROUND

Plaintiff is a 32 year-old female who applied for Social Security Disability Insurance benefits and Supplemental Security Income benefits on January 26, 2018, alleging disability beginning January 24, 2017. (AR 15.) The ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 24, 2017, the alleged onset date. (AR 17.)

Plaintiff's claims were denied initially on June 4, 2018, and on reconsideration on August 29, 2018. (AR 15.) Plaintiff filed a timely request for hearing, and on April 22, 2020, the Administrative Law Judge ("ALJ") Ena Weathers held a telephone hearing. (AR 15.) Plaintiff and all participants attended the hearing by telephone. (AR 15.) Plaintiff testified at the hearing and was represented by counsel. (AR 15.) Vocational expert ("VE") Luis O. Mas, Ph.D., also appeared by telephone at the hearing. (AR 15.)

The ALJ issued an unfavorable decision on May 5, 2020. (AR 15-25.) The Appeals Council denied review on October 27, 2020. (AR 1-3.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. The ALJ committed reversible error in failing to set forth the requisite "clear and convincing reasons" for rejecting the opinion of treating source physicians who diagnosed the Plaintiff with susac's syndrome, a severe autoimmune disorder.
2. The ALJ erred in evaluating Plaintiff's subjective complaints and credibility.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's decision is supported by substantial evidence and free of legal error. Coleman v. Saul, 979 F.3d 751, 755 (9th Cir. 2020); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**THE SEQUENTIAL EVALUATION**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impairment

meets or equals one of the listed impairments, the claimant is presumptively disabled. <u>Bowen</u>, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. <u>Pinto v. Massanari</u>, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000). The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. <u>Parra</u>, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. <u>Id.</u>

**THE ALJ DECISION**

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since January 24, 2017, the alleged onset date. (AR 17.)

At step two, the ALJ determined that Plaintiff has the following medically determinable severe impairments: susac syndrome with visual disturbance; migraine headaches; and obesity. (AR 17-19.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 20.)

The ALJ then found that Plaintiff has the RFC to perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c) with the following limitations:

> Avoidance of concentrated exposure to hazards; perform work in jobs not requiring fine visual acuity (unable to read fine print); engage in non-tandem tasks without strict production pace; and tolerate occasional direction interaction with the public.

(AR 20-23.) In determining the above RFC, the ALJ made a determination that Plaintiff's subjective symptom allegations were "not entirely consistent" with the medical evidence and other evidence of record. (AR 21.)

At step four, the ALJ found that Plaintiff is not able to perform any past relevant work as a server, executive assistant, and program manager. (AR 23.) The ALJ, however, also found at step five that, considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Claimant can perform, including the jobs of flower picker, general helper, and hospital cleaner. (AR 23-25.)

Consequently, the ALJ found that Claimant is not disabled within the meaning of the Social Security Act from the alleged onset date of January 24, 2017, through the date of decision of May 5, 2020. (AR 24-25.)

## DISCUSSION

The Court reverses and remands the ALJ decision. The ALJ's nondisability determination is not supported by substantial evidence and free of legal error.

**I.     PLAINTIFF'S CONTENTION NO. 1**

Plaintiff contends that she is unable to work due to episodes of spontaneous vision loss due to susac syndrome and migraine headaches that occur up to 20 days a month. (AR 21.) The ALJ did find that her susac syndrome and migraines were severe medically determinable impairments. (AR 17.) The ALJ, however, found that Plaintiff was not as limited as alleged (AR 22) and that she could perform a restricted range of medium work on an ongoing, full-time basis. (AR 20, 22.)

Plaintiff contends that the ALJ failed to set forth "clear and convincing reasons for rejecting the opinion of treating source physicians who diagnosed Plaintiff with a severe autoimmune disorder." (JS 2.) This is incorrect. Plaintiff does not identify any treating source physician whose opinion the ALJ rejected. Nor does the ALJ decision contain any rejection of a treating source opinion. Nor did any treating source opine that Plaintiff was precluded from all work. Mere diagnosis of the medical impairments of susac syndrome and migraine headaches, moreover, is not sufficient to sustain a finding of disability. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990). An impairment must result in functional limitations that preclude all work. Pinto, 249 F.3d at 844-45; Moore, 216 F.3d at 869.

Plaintiff next asserts that the ALJ did not find her susac syndrome severe and summarily dismissed it in one paragraph of the decision. (JS 10.) This too is incorrect. The ALJ specifically found that Plaintiff's susac syndrome is a severe medical impairment. (AR 17.) The ALJ devoted three pages to Plaintiff's vision loss due to susac syndrome and migraine headaches. (AR 21-23.)

Plaintiff asserts that the ALJ committed reversible error in failing to find Plaintiff disabled at step three of the sequential evaluation process pursuant to Listing 14.0. (JS 2, 4.) The ALJ, however, noted that the record does not include the opinion of a medical expert that Plaintiff's impairments equal any Listings. (AR 20.) Plaintiff, moreover, fails to demonstrate how she meets Listing 14.01. An impairment that meets a Listing must satisfy all the medical criteria for that Listing. Section 404.1525(c)(3); Sullivan v. Zebley, 493 U.S. 521, 530 (1990). An impairment cannot meet a Listing based only on a diagnosis. Section 404.1525(d); Key v. Heckler, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

Plaintiff further contends that the ALJ failed to consider Plaintiff's severe mental impairment in using the sequential evaluation process. Again, not true. The ALJ made an explicit finding at step two of the sequential process that Plaintiff's mental impairment is not severe. (AR 18-19.) This finding was supported by substantial evidence. (AR 18-19.)

///

///

///

## II. PLAINTIFF'S CONTENTION NO. 2

Plaintiff contends that the ALJ erred in evaluating Plaintiff's subjective complaints and credibility.[2] The Court agrees.

### A. Relevant Federal Law

The ALJ's RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses, and subjective symptoms. See SSR 96-5p; 20 C.F.R. § 1527(e). In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition. Robbins, 466 F.3d at 883.

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 esp. n.2. The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the ALJ finds the claimant's pain testimony not credible, the ALJ "must specifically make findings which support this conclusion." Bunnell, 947 F.2d at 345. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); see also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Bunnell, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; see also

---

[2] Plaintiff initially presented Contention No. 2 as a Step Three issue (JS 2), but later characterized it as a subjective symptom issue. (JS 12.) Plaintiff also presented the Step Three issue within Contention No. 1, and the Court has addressed it within that Contention and the subjective symptom issue within Contention No. 2.

Reddick, 157 F.3d at 722. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

### B. Analysis

In determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause "some of the alleged symptoms." (AR 21.) The ALJ, however, also found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent" with the medical evidence and other evidence of record. (AR 21.) Because the ALJ did not make any finding of malingering, she was required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptoms. Smolen, 80 F.3d at 1283-84; Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008). The ALJ failed to do so.

#### 1. Medical Evidence

The ALJ found that Plaintiff's subjective symptom allegations were inconsistent with the medical evidence. (AR 21.) An ALJ is permitted to consider whether there is a lack of medical evidence to corroborate a claimant's alleged symptoms so long as it is not the only reason for discounting Plaintiff's subjective symptom allegations. Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005). In January 2017, Plaintiff had an episode of acute right eye vision loss thought to be a susac flare. (AR 21, 62, 330-332.) She was treated with the steroid prednisone and three days of hyperbaric oxygen therapy ("HBOT"), after which her visual acuity was back to baseline. (AR 62, 612.) She has a history of susac syndrome and was last seen in 2014. (AR 21.) An MRI revealed no new lesions. (AR 21.) Treatment notes indicated she had three vision loss episodes since January but her vision fields again became intact. (AR 21.)

Plaintiff had another acute episode of bilateral vision loss in November 2017, which responded to three sessions of HBOT. (AR 21, 615.) Her vision returned to 20/20 in each eye after two days. (AR 21, 615.) An MRI revealed no occlusions (AR 615), and white matter lesions were stable (AR 21).

Plaintiff had multiple episodes of vision loss from February to April 2018. (AR 758.) In April 2018, she had a sudden complete loss of vision that was still not resolved five days later,

with 75% vision in left eye still reduced.  (AR 21, 758, 773.)  She stated that her episodes of blindness lasted from 20 minutes to a few days.  (AR 84.)  An April brain scan demonstrated stability, and by May 2018 her vision was back at baseline.  (AR 21.)  The ALJ did not mention a September 2018 episode in which Plaintiff lost left eye vision that did not resolve until two days later after she received HBOT treatment.  (AR 1020.)

In January 2019, Plaintiff reported five episodes of vision loss in the previous two months, but that her vision had been returning to normal without medical intervention.  (AR 22.)  In October 2019, she indicated a period of vision loss but was unconcerned with it.  (AR 22.)  In December 2019, she also complained of vision loss between intravenous treatments, lasting a week.  (AR 22, 1017.)

Her treating physicians attributed her vision loss episodes not to susac syndrome but to complicated migraines and possible long term use of prednisone.  (AR 21, 773-774, 961, 987, 1020, 1028-29.)  The ALJ noted Plaintiff's migraine concerns but found that they are "at most, intermittent in nature."  (AR 22.)  Her brain MRIs have been stable.  (AR 22.)  The ALJ observed that Plaintiff's susac syndrome predated her alleged onset date for quite some time and there has been no worsening of her white matter lesions.  (AR 22.)  The ALJ notes that in 2019 her episodes of vision loss have been returning to normal without medical intervention. (AR 22.)  The ALJ found that the frequency of vision loss episodes is not well supported by Plaintiff's treatment records.  As a result, the ALJ found that Plaintiff was not as limited as claimed and was not precluded from all work.

Missing from the ALJ's analysis is any assessment of the duration of Plaintiff's vision loss episodes and the resulting time off-task they can be expected to cause.  The ALJ did not include in her hypothetical any limitation regarding time off-task due to visual loss episodes. (AR 49-52.)  The ALJ did ask the VE whether any jobs would be available in the national economy if a person would be "off task up to 15% of the workday including normal breaks." (AR 53.)  The VE responded, "That person is not employable, Your Honor."  (AR 53.)  Plaintiff claims the reason she cannot work is that she loses her vision unexpectedly.  (AR 40.)  Plaintiff testified at the hearing in April 2020 that her vision loss varies in duration from a few hours to a

couple of weeks. (AR 40-42.) In a typical month she loses her vision 15-20 days. (AR 40-42.) Also, State agency reviewers reported Plaintiff's statement that her episodes of temporary but complete blindness last from 20 minutes to a few days, and can last up to three weeks. (AR 84.) Her doctors did not question Plaintiff's visual loss episodes, only their cause, and prescribed the steroid prednisone for years.

The Ninth Circuit requires that an ALJ's hypothetical question to a VE contains all of a claimant's limitations. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). A VE's testimony that does not contain all of a plaintiff's limitations has no evidentiary value and does not constitute substantial evidence. Id. Here, there is documented evidence of vision loss requiring hyperbaric treatment occurring a day or more. Plaintiff also claims numerous visual loss episodes that last 20 minutes or more. The ALJ makes no assessment of the duration of Plaintiff's episodes of visual loss and the time off-task they cause. The fact that Plaintiff's visual episodes may be due to intermittent migraines that resolve without medical treatment does not change the fact that Plaintiff continues to have visual loss episodes that would have required her to be off-task for the length of the episode. Notably, the ALJ did not say that the visual loss episodes have stopped or were likely to stop.

The ALJ found at step four of the sequential evaluation that Plaintiff could not perform her past relevant work. (AR 23.) At step five, the Commissioner has the burden to show that Plaintiff can perform jobs in the national economy. Lounsburry, 468 F.3d at 1114. The ALJ failed to meet the Commissioner's step five burden. Even if it could be said that Plaintiff's visual loss episodes had lessened by 2019, the ALJ does not address whether Plaintiff may be entitled to a closed end period of benefits for the period from January 2017 to September 2018 when Plaintiff received HBOT to restore her vision.

The ALJ's RFC is not supported by substantial evidence nor is the ALJ's hypothetical to the VE.

### 2. Activities Of Daily Living

The ALJ found that, despite alleging her vision loss was work-preclusive, the evidence of record shows that Plaintiff remained quite active. (AR 22.) The ALJ noted that Plaintiff began

going to the gym in April 2017, babysat her niece and went to Disneyland in June 2017, returned to school in August 2017, and engaged in high intensity exercise in 2018. (AR 22.) In 2018, she drove to her examination. (AR 23.)

The ALJ does not explain how or why these activities are inconsistent with Plaintiff's visual loss episodes. In fact, episodes occurred during and because of these activities. Plaintiff testified at the hearing that she could have an episode while driving and thus quit driving. (AR 40-41.) Her migraines worsened after returning to school in 2017. (AR 21.) December treatment notes document complaints of vision loss lasting a week between intravenous treatments. (AR 22, 1071.)

Again, the Commissioner has the burden at step five to demonstrate clear and convincing reasons for rejecting Plaintiff's subjective symptom allegations. The ALJ failed to carry the Commissioner's burden.

\* \* \*

The ALJ's nondisability determination is not supported by substantial evidence or free of legal error.

## ORDER

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this case for further proceedings in accordance with this Memorandum Opinion and Order and with law.

DATED: July 15, 2021            */s/ John E. McDermott*
                                               JOHN E. MCDERMOTT
                                  UNITED STATES MAGISTRATE JUDGE